**Michael Faillace & Associates, P.C.**
**Employment and Litigation Attorneys**

60 E. 42nd Street, Suite 4510                                           Telephone: (212) 317-1200
New York, New York 10165                                                Facsimile: (212) 317-1620
_____

michael@faillacelaw.com

                                                                        November 22, 2017

**VIA ECF**

Honorable Magistrate Judge Debra Freeman
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 17A
New York, NY 1000-1312

   **Re:**         Gaspar Sanchez v. Lira of New York, Inc, et al.
                   Index No. 17-cv-1431 (DCF)

Dear Judge Freeman:

   This office represents Plaintiff Gaspar Sanchez in the above referenced matter. Plaintiff writes jointly with Defendants to submit this letter setting forth our views on why the agreed upon settlement in this matter is fair.

   The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the Agreement is attached hereto as "Exhibit A." We therefore ask the Court to approve the settlement pursuant to _Cheeks v. Freeport Pancake House_, Inc., 796 F.3d 199 (2d Cir. 2015).

   Sanchez brought this suit alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), violations of the New York Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and violations of the hospitality wage orders codified at N.Y.C.R.R. Tit. 12 § 146. Defendants contested the allegations in the Complaint and have entered into a settlement of this action without admitting any liability.

   Specifically, Sanchez alleged he was employed by Defendants at a restaurant called Luke's bar & Grill. From August 2014 through September 2015 Sanchez alleges he regularly worked over 40 hours a week, and was paid a fixed weekly salary by Defendants that failed to appropriately compensate him at the minimum wage rate and overtime rate. Sanchez alleges that from October 2015 through December 2015, Sanchez regularly worked 30 hours per week and was paid $5.00 per hour for 18 hours and $5.65 per hour for 12 hours.[1] From February 2016 through December 2016, Sanchez alleged he usually worked either 18 or 24 hours per week and was paid at the rate of $7.50 per hour.

---

[1] These allegations differ from those in the Complaint, as Sanchez has adjusted his account based on document discovery.

Defendants contested the allegations in the Complaint. Most importantly, Defendants contested Sanchez's claim that he worked 54-56 hours per week from August 2014 through September 2015. Defendants produced documents that appeared to demonstrate that in many weeks Sanchez worked close to 40 hours per weeks, and that he rarely, if ever, worked as many as 54-56 hours per week. Defendants, supported by their records, also asserted that Sanchez did not begin working for them until October 2014. These records, together with Defendants' anticipated testimony, would have significantly reduced Defendants' liability to Sanchez for minimum wage and overtime damages in the August 2014 to September 2015 period.

### I.     The Proposed Settlement is Fair and Reasonable

Under the settlement, Defendants will pay $39,000 to settle all claims over twenty-two monthly installments. Of the settlement amount, two thirds after costs, or $25,633 will go to Sanchez, with $13,367.00 to go to Sanchez's attorneys.

Sanchez alleged he was entitled to back wages of approximately $20,771.73 from Defendants. Sanchez estimates that if he had recovered in full for his claims, exclusive of attorneys' fees, he would be entitled to approximately $56,815.82. This calculation was based on the assumption that Sanchez's allegations as to his start date and his hours worked would be fully accepted. As discussed above, it was likely that Defendants would have been able to significantly decrease their liability by demonstrating that Sanchez did not work as many hours as he claimed, and was possible that they could demonstrate that he started working for Defendants two months later than he claims.

A court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

Throughout the litigation, there were contested factual disputes that went to the heart of Sanchez's claims. Specifically, Defendants contested: (1) the alleged shifts/hours worked by Sanchez; and (2) Sanchez's start date. Also, Defendants produced employment records contradicting much of Sanchez's claims on these issues.

Even if Sanchez fully prevailed on these disputed issues, as stated above, his back wages would have been approximately $20,771.73. He will receive more than that amount in the settlement. We submit that the agreement would be fair if there were not these factual disputes. Considering there is a reasonable likelihood that the amount of an award would be less than Plaintiff's best case scenario calculation, the settlement amount is certainly fair.

Considering the risks in this case outlined above, Sanchez believes that this settlement is an excellent result, and should be approved as fair. *See Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement").

Defendants do acknowledge they are likely to face some liability. However, Defendants have consistently argued that they are a small restaurant in Manhattan, not some elaborate organization, and that they do not have the kind of income to satisfy the potential judgment Snachez might receive at trial. As such, Sanchez believes the settlement is reasonable because of the risk that they may not prevail on all of their claims, and may not be able to collect a post-trial judgment. "Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *Lliguichuzhca v Cinema 60, LLC*, 948 F Supp 2d 362, 364 (SDNY 2013).

## II. Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement, and in accordance with their retainer agreement with the Plaintiffs, Plaintiffs' counsel will receive $13,367.00 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation, as well as a reduction in fees from what is identified in Plaintiff's retainer agreement, which provide that forty percent of Plaintiff's recovery will be retained by the firm.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Quiroz v. NYC Bldg. Mgmt. LLC,* 2017 U.S. Dist. LEXIS 141162, *6 (S.D.N.Y. Aug. 30, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Palaocio v. E*TRADE Fin. Corp.*, 2012 U.S. Dist. LEXIS 88019, *18-*19, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ("A percentage-of-recovery fee award on one-third is consistent with the Second Circuit's decision in *Arbor Hill*"); *Ezpino v. CDL Underground Specialists, Inc.,* 2017 U.S. Dist. LEXIS 103012, *8 (E.D.N.Y. June 30, 2017) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's attorneys; requested award is reasonable. Additionally, everyone covered by this settlement has already agreed to the fee provided for in the settlement.

Plaintiff's attorneys' lodestar amount of attorneys' fees is $9,335.00.[2]  *See* Annexed Exhibit B. While this is less than the amount they will receive in the settlement, there is a

---

[2] This is a total lodestar amount. Some of the fees were generated in connection with Plaintiff's settlement with Defendants By the Glass Inc. (d/b/a Uva), Taro Restaurant Inc. (d/b/a Due), Luigi Lusardi, Mauro Lusardi, and Massimo Lusardi. Plaintiff's attorneys received $40 in fees and $375 in costs from that settlement. (*See* Dkt Nos. 36, 37)

reasonable relationship between the fees Plaintiff's attorneys will receive and their lodestar amount.

  As a result of Plaintiff's counsel's significant experience representing plaintiffs in the New York City in wage and hour litigation, Plaintiff's counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations.

  Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

         Respectfully submitted,

         /s/ Michael Faillace
         Michael Faillace, Esq.
         MICHAEL FAILLACE & ASSOCIATES, P.C.
         Attorneys for the Plaintiffs

Encls.

Cc: Defendants' counsel (Via ECF)